UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

COY LEE COLEMAN, JR.,

    Petitioner,

v.                                                              Case No. 3:13cv449/LC/CJK

MICHAEL CREWS,

    Respondent.
_____/

REPORT AND RECOMMENDATION

    Before the court is a second amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 17).  Respondent moves to dismiss the petition as time-barred, providing relevant portions of the state court record.  (Doc. 24).  Petitioner opposes dismissal.  (Doc. 29).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that the petition is untimely and should be dismissed.

BACKGROUND AND PROCEDURAL HISTORY

Between December of 2008 and July of 2009, the State of Florida filed a series of criminal charges against petitioner in the Circuit Court for Escambia County, Florida. On December 2, 2008, petitioner was charged in Case No. 08-CF-5856 with one count of Selling, Manufacturing, or Delivering, or Possessing With the Intent to Sell, Manufacture, or Deliver, a Controlled Substance (Cocaine) on or about October 30, 2008. (Doc. 24, Ex. A, p. 1).[1]

The same day petitioner was charged in Case No. 08-CF-5857 with one count of Selling, Manufacturing, or Delivering, or Possessing With the Intent to Sell, Manufacture, or Deliver, a Controlled Substance (Cocaine) on or about November 7, 2008. (Ex. A, p. 2).

Also on that date petitioner was charged in Case No. 08-CF-5858 with three crimes: Trafficking in Illegal Drugs – Hydrocodone (4 grams or more but less than 14 grams) on November 21, 2008 (Count 1); Possession of a Controlled Substance (Cocaine) (Count 2); and Possession of Drug Paraphernalia (Count 3). (Ex. A, p. 3). The trafficking charge was amended on March 13, 2009, to charge a greater amount of Hydrocodone (28 grams or more but less than 30 kilograms). (*Id*., p. 4). The possession charges remained the same.

On July 8, 2009, petitioner was charged in Case No. 09-CF-3045 with five crimes: Throwing a Deadly Missile At, Within, or In an Occupied Vehicle (Count 1); three counts of Aggravated Assault by Threat (Counts 2-4); and one count of Criminal Mischief (Count 5). (Ex. A, p. 5).

---

[1] All references to exhibits are to those provided at Doc. 24, unless otherwise noted. If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Petitioner, represented by counsel, executed a written plea form (titled "Sentence Recommendation") on June 15, 2009, in which he pled no contest to all counts as charged in Case Nos. 08-CF-5856, 08-CF-5857 and 08-CF-5858, with no agreement as to sentence (otherwise known as a "straight-up" plea to the court). (Ex. A, pp. 46-49). Petitioner entered his plea in open court on June 15, 2009. (Ex. A, pp. 38-45). After conducting an extensive plea colloquy, the trial judge found petitioner's plea freely, voluntarily and knowingly entered, and accepted the plea. (*Id*.). On December 1, 2009, petitioner was adjudicated guilty of the crimes and sentenced as follows: (1) Case No. 08-CF-5856, petitioner was sentenced to 82.2 months imprisonment; (2) Case No. 08-CF-5857, petitioner was sentenced to 82.2 months imprisonment; and (3) Case No. 08-CF-5858, petitioner was sentenced to a mandatory minimum term of 25 years imprisonment on Count 1, to 5 years imprisonment on Count 2 and to time served on Count 3, with all counts in all cases to run concurrently. (Ex. A, pp. 70-77, 88-101).

Also, on December 1, 2009, petitioner pled no contest to all counts in Case No. 09-CF-3045, with the agreement that his sentences would run concurrently with each other and with the sentences imposed in the three other cases. (Ex. A, pp. 78-82). The trial judge conducted a plea colloquy and accepted petitioner's plea after finding it freely, voluntarily and knowingly made. (*Id*.). Petitioner was sentenced to concurrent terms of 94.8 months imprisonment on Counts 1-4 and to time served on Count 5. (Ex. A, pp. 78-82, 88-101). A judgment encompassing all four of petitioner's cases was rendered December 1, 2009. (Ex. A, pp. 88-101).

Petitioner initiated a direct appeal, and appellate counsel filed an *Anders* brief, asserting that no good faith argument could be made that reversible error occurred in the trial court. (Ex. B). Petitioner was given the opportunity to file a *pro se* brief (Ex.

D), but chose not to. Petitioner's judgment of conviction and sentences were affirmed on August 3, 2010, without a written opinion. *Coleman v. State*, 41 So. 3d 893 (Fla. 1st DCA 2010) (per curiam) (Table) (copy at Ex. E). The mandate issued August 31, 2010. (Ex. F).

On October 28, 2010, petitioner filed a *pro se* motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. (Ex. G, pp. 1-10). The state circuit court denied the motion in a written order filed March 23, 2011. (Ex. G, pp. 11-58). The Florida First District Court of Appeal (First DCA) affirmed on July 14, 2011, without a written opinion. *Coleman v. State*, 65 So.3d 1056 (Fla. 1st DCA 2011) (per curiam) (Table) (copy at Ex. J). The mandate issued September 22, 2011. (Ex. M).

On September 20, 2012, petitioner filed a second Rule 3.850 motion. (Ex. N, pp. 1-25). The state circuit court dismissed the motion with prejudice on October 19, 2012, as untimely and successive. (*Id*., pp. 117-121). Petitioner filed a petition for writ of prohibition and/or writ of certiorari and/or interlocutory appeal of the circuit court's dismissal order. (Ex. O). The First DCA treated the petition as a notice of appeal (Ex. P), and affirmed the dismissal on March 28, 2013. *Coleman v. State*, 112 So.3d 113 (Fla. 1st DCA 2013) (per curiam) (copy at Ex. S). The mandate issued May 28, 2013. (Ex. V).

On July 17, 2013, petitioner filed a motion for reduction or modification of sentence under Florida Rule of Criminal Procedure 3.800(c). (Ex. W). The state circuit court denied the motion on November 21, 2013, as untimely and, construed as a Rule 3.850 motion, untimely and successive. (Ex. X). Petitioner did not appeal.

Petitioner filed his original federal habeas petition in this court on August 6, 2013 (doc. 1), which he later amended (docs. 5, 17). Respondent asserts the petition

is untimely and should be dismissed. (Doc. 24).

## DISCUSSION

Because petitioner filed his § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs this petition. *Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). The AEDPA establishes a 1-year period of limitation for a state prisoner to file a federal application for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1). The limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2).

Petitioner has not asserted that a State-created impediment to his filing a federal habeas petition existed, that he bases his claims on a right newly recognized by the United States Supreme Court, or that the facts supporting his claims could not

have been discovered through the exercise of due diligence before his conviction became final. Accordingly, the statute of limitations is measured from the remaining trigger, which is the date on which petitioner's conviction became final. *See* 28 U.S.C. § 2244(d)(1).

The First DCA affirmed petitioner's judgment of conviction on August 3, 2010. Petitioner did not seek review of his conviction in the United States Supreme Court. Accordingly, petitioner's conviction became "final" for purposes of § 2244 on November 1, 2010, when the ninety-day period for seeking certiorari from the Supreme Court expired.[2] *See* 28 U.S.C. § 2244(d)(1); *Bond v. Moore*, 309 F.3d 770, 773 (11th Cir. 2002) (holding that limitations period began to run when the time expired for filing a petition for certiorari with the United States Supreme Court).

At the time petitioner's conviction became final, his first Rule 3.850 motion (filed on October 28, 2010) was pending, which tolled the limitations period. Therefore, although the limitations period was triggered on November 1, 2010, it was statutorily tolled until September 22, 2011, when the mandate issued in petitioner's appeal of the order denying postconviction relief. The statute of limitations expired one year later on September 24, 2012.[3]

Petitioner's second Rule 3.850 motion filed on September 20, 2012, did not statutorily toll the limitations period, because it was not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 414, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005) (holding that a state postconviction petition

---

[2] The 90-day period for filing in the United States Supreme Court a petition for a writ of certiorari seeking review of a decision of a state appellate court runs from the date of the state court's opinion, not the date of the mandate. *See* SUP. CT. R. 13.3; *see also Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006).

[3] September 22, 2012, was a Saturday, and September 23, 2012, was a Sunday.

rejected by the state court as untimely is not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2)); *Allen v. Siebert*, 552 U.S. 3, 7, 128 S. Ct. 2, 169 L. Ed. 2d 329 (2007) (per curium) (reiterating that "When a postconviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2).") (internal quotations and citations omitted).

Petitioner's collateral relief motion filed on July 17, 2013, did not trigger the tolling benefit of § 2244(d)(2), because there was no limitations period left to be tolled. *Hutchinson v. Florida*, 677 F.3d 1097, 1098 (11th Cir. 2012) ("In order for that § 2244(d)(2) statutory tolling to apply, the petitioner must file his state collateral petition before the one-year period for filing his federal habeas petition has run." (*citing McCloud v. Hooks*, 560 F.3d at 1227)); *Alexander*, 523 F.3d at 1294 (holding that a state court motion for postconviction relief cannot toll the limitations period if that period has already expired); *Webster v. Moore*, 199 F.3d 1256, 1269 (11th Cir. 2000) (same). Petitioner's federal habeas petition, originally filed on August 6, 2013, is untimely.

In an attempt to overcome the statute of limitations bar, petitioner asserts he is entitled to equitable tolling and is "actually innocent" of the Trafficking in Hydrocodone offense. (Doc. 29).

## EQUITABLE TOLLING

A federal habeas petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" of his federal habeas petition. *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549, 2562, 177 L. Ed. 2d 130 (2010) (internal quotation marks omitted); *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (holding that equitable tolling is available "when a movant

untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence"). "The burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner." *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011) (*citing Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002)). The petitioner must allege more than conclusory allegations, *San Martin*, 633 F.3d at 1268, and must "show a causal connection between the alleged extraordinary circumstances and the late filing of the federal habeas petition." *Id.* at 1267. Decisions regarding equitable tolling "must be made 'on a case-by-case basis' in light of 'specific circumstances, often hard to predict in advance,' although [courts] 'can and do draw upon decisions made in other similar cases for guidance.'" *Hutchinson*, 677 F.3d at 1098 (*quoting Holland*, 130 S. Ct. at 2563).

Petitioner asserts his untimely filing was caused by the following "extraordinary circumstances": (1) an inmate law clerk miscalculated petitioner's filing deadline, (2) petitioner was denied reasonable access to the prison law library to research and draft his state postconviction claims due to the librarian being out on sick leave and (3) the prison lost petitioner's legal materials "including his postconviction motion which caused that motion to have to be re-prepared and filed late." (Doc. 29, p. 9). None of petitioner's contentions arguably justifies equitable tolling.

As to petitioner's first contention, "[a]ttorney [or inmate law clerk] miscalculation is simply not sufficient to warrant equitable tolling." *Lawrence v. Florida*, 549 U.S. 327, 336, 127 S. Ct. 1079, 1085, 166 L. Ed. 2d 924 (2007). Additionally, petitioner's documentation demonstrates that the alleged misadvice concerned petitioner's deadline for filing a Rule 3.850 motion, not a federal habeas

petition. (Doc. 29, App. A; *see also* Doc. 29, App. D, Ex. E, pp. 34, 36 and 37 in ECF). Even if petitioner's documentation indicated the alleged miscalculation concerned the federal habeas filing deadline, that advice – that petitioner's deadline was September 22, 2012 – would have benefitted petitioner, because it was earlier than petitioner's actual filing deadline of September 24, 2012. (*See* Doc. 29, App. A, p. 5 in ECF). The inmate law clerk's alleged misadvice concerning petitioner's filing deadline is not an extraordinary circumstance warranting equitable tolling. *See Holland*, 130 S. Ct. at 2564 ("We have previously held that 'a garden variety claim of excusable neglect,' such as a simple 'miscalculation' that leads a lawyer to miss a filing deadline, does not warrant equitable tolling." (*quoting Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990), *and Lawrence, supra*, 549 U.S. at 336)); *accord Hutchinson* 677 F.3d at 1100 (concluding that if the extent of the attorney error is postconviction counsel's miscalculation of the deadline by which he was required to file the federal habeas petition (or a state collateral petition in time to statutorily toll the federal limitations period), that circumstance is insufficient to justify equitable tolling: "If attorney miscalculation, error, or negligence were enough for equitable tolling, the § 2244(d) statute of limitations would be tolled to the brink of extinction because in practically every case where there is a failure to meet the filing deadline an attorney is at fault.").

Petitioner's second and third contentions regarding library access and having to re-prepare his Rule 3.850 motion fare no better. Petitioner's deadline for filing a Rule 3.850 motion was August 31, 2012, which is two years after issuance of the mandate in his direct appeal. (Doc. 24, Ex. N, pp. 117-118 (*citing* Fla. R. Crim. P. 3.850(b)). The documentation petitioner submits to support equitable tolling (inmate requests for access to the law library) demonstrates that petitioner was provided

frequent, reasonable access to the law library and that the reason he did not file his second Rule 3.850 earlier was because he thought his deadline was September 22, 2012. (Doc. 29, App. B and App. D, Ex. E, pp. 34, 36, 37 in ECF). The issue of the law librarian's absence occurred during three months from May - July of 2011, which was <u>before</u> the federal habeas statute of limitations began to run. (Doc. 29, App. D, Ex. A, p. 3 in ECF). Petitioner has not established that an extraordinary circumstance stood in his way and prevented timely filing of his federal habeas petition. Petitioner is not entitled to equitable tolling.

## ACTUAL INNOCENCE

Actual innocence, if proved, serves as a gateway through which a federal habeas petitioner may pass to overcome a statute-of-limitations bar to consideration of the merits of his constitutional claims. *McQuiggin v. Perkins*, — U.S. —, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013). "[T]enable actual-innocence gateway claims are rare." *Id.*, 133 S. Ct. at 1928. The petitioner must make a threshold showing that satisfies the *Schlup* standard – the standard of proof governing procedural claims of actual innocence. *McQuiggin*, 133 S. Ct. at 1928 (*citing Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). The *Schlup* standard requires the habeas petitioner to demonstrate that constitutional error "probably resulted" in the conviction of one who is actually innocent. *Id.*, 513 U.S. at 324, 326-27, 115 S. Ct. at 865, 867. A mere allegation of innocence is not enough; "[t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S.

at 324, 115 S. Ct. at 865. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329, 115 S. Ct. 851; *see House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met). "The actual innocence exception is 'exceedingly narrow in scope,' and the petitioner must demonstrate that he is factually innocent rather than legally innocent." *Id.* (*citing Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)).

> Petitioner alleges the following in support of his actual innocence claim:
>
> [P]etitioner was charged with, led to plea while incompetent to do so (doc. 24, Exhibit N, pg. 49-52); (App. C) and then sentenced to 25 years state prison for allegedly trafficking in his own prescription medications, not because he sold any narcotics to anyone, but because he was found possessing what he had a right to possess. The State simply jumped the gun because of the weight thereof and charged trafficking in the pills petitioner had a legal right to possess because he had a lawful prescription for them.

(Doc. 29, p. 9). Petitioner has attached what he characterizes as "petitioner's pharmacutical [sic] and medical records which prove that (1) petitioner was lawfully prescribed trafficking weights of hydrocodone at the time of his arrest for this offense, and (2) that he was prescribed psychotropic medications and was under a doctor's care for mental health issues prior to the events that transpired in this case and during the plea process. . . ." (Doc. 29, p. 10 (citing attached App. D)).

The documentation petitioner submits to support his claim that he is actually innocent of Trafficking in Hydrocodone is dated November 24, 2008, which is seven months <u>prior</u> to petitioner's execution of the written plea form and entry of his no

contest plea. (Doc. 29, App. D, Ex. C). Petitioner's evidence is hardly new; it was known to petitioner – and known without question to the same extent as now known – at the time he entered his plea. In any event, petitioner's pharmacy and medical records indicating petitioner was prescribed 30 Lortab tablets (7.5-500mg) on July 1, 2008, does not arguably show petitioner did not traffic in 28 grams or more of Hydrocodone on November 21, 2008. Petitioner has not met the rigorous standard demanded by *Schlup*. *See McQuiggin*, 133 S. Ct. at 1936 ("The [actual innocence] gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" (*citing Schlup*, 513 U.S. at 316)).

Petitioner's allegation that he was prescribed psychotropic medication during the plea process (and thus did not enter his plea knowingly and intelligently) does not suggest petitioner is factually innocent of his crimes and does not meet the *Schlup* standard. *Bousley*, 523 U.S. at 623, 118 S. Ct. at 1611 ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency."). Petitioner's claim also fails for the reason that his evidence does not suggest he was incompetent to enter his plea. "Treatment with anti-psychotic drugs does not *per se* render a defendant incompetent to stand trial." *Sheley v. Singletary*, 955 F.2d 1434, 1438 (11th Cir. 1992) (*citing Price v. Wainwright*, 759 F.2d 1549, 1555 (11th Cir. 1985)). In *Sheley*, the court rejected the habeas petitioner's claim that his ingestion of psychotropic drugs before he entered his guilty plea in state court rendered the plea involuntary. *Id.*, 955 F.2d at 1437-39. "[A] '[petitioner] must present evidence demonstrating that the dosage [of anti-psychotic medication] given him affected him sufficiently adversely as to raise a doubt of his ability to consult with his lawyer and to have a rational

understanding of the proceedings against him.'" *Id*., 955 F.2d at 1438-39 (*quoting Fallada v. Dugger*, 819 F.2d 1564, 1569 (11th Cir. 1987)). The court found that Sheley failed to present sufficient evidence to support his claim that his "medication caused him to be confused and to lack understanding of the proceedings under the legal standard of competence." *Id*., 955 F.2d at 1439. The same is true of petitioner here. Petitioner's allegations and documentation (doc. 29, App. C and D) do not indicate that at the time petitioner entered his plea he lacked a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," or lacked "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788 4 L. Ed. 2d 824 (1960) (internal quotation marks omitted). To the contrary, the certifications petitioner made on his written plea form, defense counsel's certification on the plea form, and petitioner's sworn statements made during his plea colloquy demonstrate that: (1) petitioner fully understood the proceedings against him, the nature of the charges, the consequences of his plea (including his sentence exposure) and the constitutional rights he was giving up; (2) petitioner reviewed the facts of his cases with his attorney and agreed there were sufficient facts available to the State to justify his no contest plea; (3) petitioner had not ingested any drugs, alcohol, or medication of any kind in the 24 hours preceding his plea; (4) petitioner had never been declared legally incompetent or insane, and entered his plea with a full understanding of all matters set forth in the charging documents and the written plea form; and (5) petitioner was not "on any type of medicine that would make it hard for [him] to make good decisions" on the day of his plea. (Doc. 24, Ex. A, pp. 40-44, 46-49). Petitioner was lucid during his plea colloquy, gave appropriate responses to the court's questions, and did not exhibit any sort of behavior which would indicate he had a problem

communicating or understanding. (*Id*., pp. 40-44).

Petitioner has not made a threshold showing that satisfies the *Schlup* standard. Petitioner's claim of actual innocence does not open the gate-way to overcome the statute of limitations bar.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Therefore, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1. That respondent's motion to dismiss (doc. 24) be GRANTED.

2. That the second amended petition for writ of habeas corpus (doc. 17), challenging petitioner's judgment of conviction and sentence in *State of Florida v. Coy Lee Coleman, Jr.* in the Circuit Court for Escambia County, Florida, Case Nos. 08-CF-5856, 08-CF-5857, 08-CF-5858 and 09-CF-3045, be DISMISSED WITH PREJUDICE.

3. That the clerk be directed to close the file.

4. That a certificate of appealability be DENIED.

At Pensacola, Florida this 8th day of October, 2014.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).